JONATHAN W. FOUNTAIN
Nevada Bar No. 10351
MATTHEW J. KREUTZER
Nevada Bar No. 8834
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
Tel. (702) 257-1483
Email: jwf@h2law.com
Email: mjk@h2law.com

*Attorneys for plaintiffs*
*Proteinhouse Franchising, LLC,*
*LRAB, LLC, and Andrew F. Bick*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| PROTEINHOUSE FRANCHISING, LLC, LRAB, LLC, and ANDREW F. BICK, <br><br> plaintiffs, <br><br> v. <br><br> KEN B. GUTMAN, STEVE HORCH, and JOHN DOE, <br><br> Defendants. | Case No. 2:17-cv-02816-APG-PAL <br><br> **ORDER GRANTING IN PART PLAINTIFFS' <u>EMERGENCY</u>, *EX PARTE*, MOTION FOR TEMPORARY RESTRAINING ORDER WITHOUT NOTICE** |

The plaintiffs have filed an Emergency, *Ex Parte*, Motion for Temporary Restraining Order Without Notice. ECF No. 3. The plaintiffs' motion is based upon verified allegations that, among other things, the defendants have: (a) seized control over plaintiffs' <proteinhouse.com> domain name; (b) shut down plaintiffs' <proteinhouse.com> website; (c) downloaded and used plaintiffs' trade secrets to identify plaintiffs' franchisees and send them false and defamatory emails about plaintiffs in order to harm and disrupt plaintiffs advertising, sales, and business relationships with their franchisees; and (d) threatened continued disruption of plaintiffs' business relationships unless plaintiffs make a $15,000 payment.

BASED ON THE EVIDENCE BEFORE THE COURT, THE COURT HEREBY FINDS AS FOLLOWS:

As a result of their use of the PROTEINHOUSE mark in commerce, the plaintiffs acquired common law rights in the PROTEINHOUSE mark for use in connection with

1

restaurant and café services including coffee, drinks and baked goods. (Verified Compl. ¶ 11.) Plaintiff LRAB also owns United States Trademark Registration No. 4,900,045 for the PROTEINHOUSE mark for use in connection with "[r]estaurant and café services including coffee, drinks and baked goods." Consumers have come to identify the PROTEINHOUSE mark with the goods and services emanating exclusively from the plaintiffs.

On October 6, 2012, the plaintiffs registered the <protein-house.com> domain name through GoDaddy.com, LLC ("GoDaddy"). The plaintiffs advertise and promote their PROTEINHOUSE brand through the <protein-house.com> domain name and associated website.

On or about June 13, 2016, the plaintiffs retained defendant Ken Gutman to work as its franchise consultant to help them expand their franchise business by recruiting and licensing new PROTEINHOUSE franchisees. On or about March 28, 2017, Gutman registered the <proteinhouse.com> domain name for the plaintiffs. After registering the <proteinhouse.com> domain name, Gutman turned control over the website to the plaintiffs. Since acquiring and setting up the <proteinhouse.com> domain name, the plaintiffs have invested substantial time and money placing digital advertising and social media content that points consumers to the <proteinhouse.com> website content rather than the <protein-house.com> website.

On or about August 11, 2016, the plaintiffs retained defendant Steve Horch to assist Gutman. Horch's responsibilities included meeting with prospective franchisees and acting as an interface between the plaintiffs and their existing and prospective franchisees. The plaintiffs required Horch to execute a non-disclosure agreement that prohibited him from using or disclosing the plaintiffs' confidential business information and trade secrets.

In September 2017, Gutman entered into discussions with a group of potential franchisees in the Philadelphia, Pennsylvania area (the "Philadelphia Group") about the possibility of the group becoming PROTEINHOUSE franchisees and opening a PROTEINHOUSE restaurant in the Philadelphia, Pennsylvania area. During these discussions, Gutman disclosed the terms of plaintiffs' standard franchise agreement to the group. However, in addition to the terms set forth in plaintiffs' standard franchise agreement, Gutman proposed

certain non-standard franchise terms to the Philadelphia Group that he claimed could be included in an "addendum" to plaintiffs' standard franchise agreement. Gutman was required to obtain (but did not receive) permission from PROTEINHOUSE or one of its principals, Bick or Reis, to propose the non-standard terms he proposed to the Philadelphia Group. When the plaintiffs learned of the non-standard terms Gutman proposed, they, through counsel, indicated to the Philadelphia Group's counsel that they would not be able to offer the non-standard terms Gutman proposed. The plaintiffs proposed an alternative deal to the Philadelphia Group. However, they were unable to save the deal. To date, the Philadelphia Group has not entered into a franchise agreement with the plaintiffs. The plaintiffs' rejection of the unauthorized and non-standard franchise terms Gutman proposed angered Gutman, and on or about October 3, 2017, Gutman terminated his business relationship with the plaintiffs.

On or about October 19, 2017, the plaintiffs learned that Horch had accessed and downloaded certain highly confidential and proprietary information and trade secrets from plaintiffs' computers including, without limitation: (i) the specific identities and contact information of the principal owners, investors, and decision-makers associated with plaintiffs' existing and prospective franchisees; (ii) a training manual for the operation of PROTEINHOUSE restaurants; (iii) an equipment list for PROTEINHOUSE restaurants; (iv) sales lists; (v) financial models; (vi) sales reports; (vii) restaurant designs; (viii) product mix reports; (ix) marketing plans; and (x) other franchisee training materials. The plaintiffs terminated Horch for cause based on his refusal and failure to follow the plaintiffs' directions and instructions for performing his job duties and based upon his theft of their confidential information and trade secrets.

On October 20, 2017, Horch stated that in exchange for a $15,000 payment, he would agree that he would not "consult with Franchisees that are seeking [his] advice on the viability of ProteinHouse."

On October 22, 2017, through counsel, the plaintiffs sent Horch a cease and desist letter, demanding that Horch cease and desist from interfering and threatening to interfere with the plaintiffs' contractual and business relationships with its existing and prospective franchisees.

3

The plaintiffs also demanded that Horch return any and all confidential information and trade secrets. To date, Horch has returned none of the plaintiffs' confidential information and trade secrets.

On or about October 18, 2017, two of plaintiffs' franchisees, Viktor Ryan and Scott Breault, forwarded an email to plaintiff Andrew Bick they had received from the Gmail address rashardkeen4@gmail.com titled "ProteinHouse that you do not know," which contained numerous allegedly false, defamatory, and/or derogatory statements about plaintiffs, and specifically Bick. The plaintiffs contend that rashardkeen4@gmail.com is a fraudulent email address, and that Gutman, Horch and/or unknown defendant John Doe, used the false email address to send the email in order to disguise the sender's true identity.

On October 30, 2017, upon information and belief, Gutman contacted GoDaddy, the registrar of the <proteinhouse.com> website, falsely represented that he was the owner of the <proteinhouse.com> domain name and website, provided his contact information to GoDaddy, and changed the password to the GoDaddy account that previously allowed the plaintiffs to administer the domain name, and took down all of the website's content. As a result, all of the digital marketing and social media marketing that the plaintiffs had directed to the robust content on the <proteinhouse.com> website was instead directed to a GoDaddy "parking" page. On October 30, 2017, one of the plaintiffs' franchisees immediately complained.

The loss of the <proteinhouse.com> website has caused and is continuing to cause the plaintiffs (and the PROTEINHOUSE franchisees) to suffer irreparable harm and injury to their business, reputations, and goodwill. Moreover, as a result of this lost advertising, the plaintiffs and franchisees have lost customer visits to their PROTEINHOUSE restaurants and associated sales revenue in amounts that are unknown and cannot be quantified. The loss of the <proteinhouse.com> website has caused and threatens to further cause injury and damage to the plaintiffs' business relationships with their franchisees.

The plaintiffs are likely to succeed on the merits or have raised serious questions going to the merits of their claims for cybersquatting in violation of the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (Count I) and for misappropriation of trade secrets in

4

violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. 1836 *et seq*. (Count II).

However, the plaintiffs have not provided any evidence that the defamatory email was sent by the named defendants in this action, or that the defendants made any other defamatory statements. They merely state that, upon information and belief, the Gmail address rashardkeen4@gmail.com is somehow associated with the defendants or some unidentified John Doe. The plaintiffs at this stage do not provide sufficient evidence to conclude that they are likely to succeed on the merits of their Nevada common law claims for defamation and defamation *per se* (Count III) against Horch or Gutman. I cannot enforce a temporary restraining order against an unnamed and unknown defendant.

The plaintiffs have suffered irreparable injury to their reputations and business by the misappropriation of trade secrets and cybersquatting claims that cannot be quantified and that are likely to continue in the absence of a temporary restraining order.

The balance of hardships tips in favor of the plaintiffs because a temporary restraining order would merely return the <proteinhouse.com> domain name to LRAB from whom it was seized, and would only require defendants to refrain from using or disclosing the plaintiffs' trade secrets and destroying relevant evidence. On the other hand, the failure to issue a temporary restraining order will likely cause the plaintiffs to suffer additional irreparable injury and incur additional expense if the <proteinhouse.com> domain name were transferred to other registrars or registrants outside of the Court's jurisdiction or if defendants continue to use and disclose plaintiffs' trade secrets.

The issuance of a temporary restraining order is in the public interest because it will promote the protection of trademark rights and trade secret rights. The defendants will suffer minimal damage by the issuance of a temporary restraining order. Therefore, a nominal bond of $500 is reasonable security.

The plaintiffs have sufficiently demonstrated in a verified complaint that issuance of this order without notice to the defendants is justified because there is a substantial risk that evidence in Horch's possession may be destroyed or that Horch will retaliate further by sharing confidential information with third parties. In addition, there is a substantial risk that if the

defendants are notified of this motion that the registration of plaintiffs' <proteinhouse.com> domain name may be transferred to a registrar located outside of this court's jurisdiction.

The plaintiffs also request that I grant them leave to serve three subpoenas prior to the Rule 26(f) conference in this case. Expedited discovery before a Rule 26(f) conference is permitted for "good cause," which "may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). The first subpoena the plaintiffs seek to issue is on Google to identify the person who created the [rashardkeen4@gmail.com](mailto:rashardkeen4@gmail.com) Gmail from which the defamatory email was sent. There is good cause to serve this subpoena in order to identify the John Doe defendant associated with this email prior to a Rule 26(f) conference, because this defendant must be identified before the plaintiffs' defamation claims can proceed any further. *See, e.g., Malibu Media, LLC v. Doe*, 64 F. Supp. 3d 51, 54 (D.D.C. 2014) (granting motion to serve subpoena on internet service provider prior to Rule 26(f) conference in order to identify copyright defendant, finding good cause was present because "Defendant must be identified before this suit can progress further").

The plaintiffs also seek leave to issue subpoenas to GoDaddy.com, LLC and its corporate affiliate Domains by Proxy, LLC to obtain documents concerning the registration of <proteinhouse.com> as well as the communications Gutman had with GoDaddy and/or Domains by Proxy that allowed him to take control over <proteinhouse.com> and shut the website down. The plaintiffs provide no reason why expedited discovery on this matter is necessary, and their request is therefore denied.

The plaintiffs have also not sufficiently shown that I have personal jurisdiction over defendant Ken Gutman in order to issue a TRO enjoining him. Other than conclusorily stating that Gutman has "systematic and continuous ties" with Nevada, the plaintiffs provide no facts in any of their pleadings or supporting evidence to support that legal conclusion. Rather, the only connection to Nevada that they allege is the existence of a contractual relationship between Gutman and the plaintiffs. Otherwise, Gutman is domiciled in Florida, and the only contractual performance alleged in the complaint occurred in Philadelphia. Therefore, at the present time,

6

no order is being issued as to Gutman.

**THEREFORE, IT IS HEREBY ORDERED THAT**, pending a preliminary injunction hearing:

1. Defendant Steve Horch and all other persons acting in concert or participation with him are hereby temporarily restrained and enjoined from:

    (a) registering or maintaining a registration for, trafficking in, or using any Internet domain name containing the PROTEINHOUSE trademark or any confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs;

    (b) misappropriating, using, or disclosing plaintiffs' trade secrets including, without limitation, any of plaintiffs: (i) franchisee information; (ii) operating manuals; (iii) equipment lists; (iv) sales lists; (v) financial models; (vi) sales reports; (vii) restaurant designs; (viii) product mix reports; (ix) marketing plans; or (x) other franchisee training materials;

    (c) deleting or destroying evidence (in any form) relevant to the plaintiffs' allegations, including, without limitation, text messages, emails, faxes, and letters;

2. Upon the issuance of this order, plaintiffs shall deposit $500 with the Clerk of the Court as security for this temporary restraining order;

3. GoDaddy.com, LLC and Domains By Proxy, LLC (the domain name registrar) shall immediately transfer the registration for <proteinhouse.com> to plaintiff LRAB, LLC;

4. The plaintiffs may immediately serve a subpoena on Google to obtain the identity of the owner of the rashardkeen4@gmail.com Gmail account.

5. Plaintiffs shall serve the Complaint, the Emergency, *Ex Parte*, Motion for Temporary Restraining Order without Notice and for Preliminary Injunction, and a copy of this order on all the defendants forthwith. To ensure that the defendants receive timely notice of the hearing, the plaintiffs may, in addition to the requirements of service identified in Fed. R. Civ. P. 4 and 5, serve the Motion, this Order, and all other pleadings filed to date on the defendants by e-mail transmission.

6. Horch shall file and serve his brief opposing plaintiffs' motion for preliminary

injunction, if any, no later than Tuesday, November 14, 2017 at 12:00 p.m.;

7. Plaintiffs shall not file a reply.

8. The parties shall appear for hearing and oral argument on plaintiffs' motion for a preliminary injunction on Wednesday, November 15, 2017 at 1:30 p.m. in Courtroom 6C at the Lloyd D. George Federal Courthouse, 333 South Las Vegas Boulevard, Las Vegas, Nevada, 89101.

**ENTERED:** this 8th day of November, 2017 at 5:22 p.m.

_____
**UNITED STATES DISTRICT JUDGE**