**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| PROTEINHOUSE FRANCHISING, LLC, LRAB, LLC, and ANDREW F. BICK, <br><br> plaintiffs, <br><br> v. <br><br> KEN B. GUTMAN, STEVE HORCH, and JOHN DOE, <br><br> Defendants. | Case No. 2:17-cv-02816-APG-PAL <br><br> **PRELIMINARY INJUNCTION** <br><br> (ECF No. 4) |

The plaintiffs filed an Emergency, *Ex Parte* Motion for Temporary Restraining Order Without Notice. ECF No. 3. On November 8, 2017, I entered a Temporary Restraining Order (TRO) and set a hearing on the plaintiffs' motion for preliminary injunction. ECF No. 8. I conducted that hearing on November 15, 2017. Based on the evidence, information, and arguments presented at that hearing, good cause exists to convert the TRO into a preliminary injunction. Therefore, the plaintiffs' motion for a preliminary injunction **(ECF No. 4) is GRANTED**, and I find as follows:

As a result of their use of the PROTEINHOUSE mark in commerce, the plaintiffs acquired common law rights in the PROTEINHOUSE mark for use in connection with restaurant and café services including coffee, drinks and baked goods. (Verified Compl. ¶ 11.) Plaintiff LRAB also owns United States Trademark Registration No. 4,900,045 for the PROTEINHOUSE mark for use in connection with "[r]estaurant and café services including coffee, drinks and baked goods." Consumers have come to identify the PROTEINHOUSE mark with the goods and services emanating exclusively from the plaintiffs.

On October 6, 2012, the plaintiffs registered the <protein-house.com> domain name through GoDaddy.com, LLC ("GoDaddy"). The plaintiffs advertise and promote their PROTEINHOUSE brand through the <protein-house.com> domain name and associated website.

On or about June 13, 2016, the plaintiffs retained defendant Ken Gutman to work as its franchise consultant to help them expand their franchise business by recruiting and licensing

1

new PROTEINHOUSE franchisees. On or about March 28, 2017, Gutman registered the <proteinhouse.com> domain name for the plaintiffs. After registering the <proteinhouse.com> domain name, Gutman turned control over the website to the plaintiffs. Since acquiring and setting up the <proteinhouse.com> domain name, the plaintiffs have invested substantial time and money placing digital advertising and social media content that points consumers to the <proteinhouse.com> website content rather than the <protein-house.com> website.

On or about August 11, 2016, the plaintiffs retained defendant Steve Horch to assist Gutman. Horch's responsibilities included meeting with prospective franchisees and acting as an interface between the plaintiffs and their existing and prospective franchisees. The plaintiffs required Horch to execute a non-disclosure agreement that prohibited him from using or disclosing the plaintiffs' confidential business information and trade secrets.

In September 2017, Gutman entered into discussions with a group of potential franchisees in the Philadelphia, Pennsylvania area (the "Philadelphia Group") about the possibility of the group becoming PROTEINHOUSE franchisees and opening a PROTEINHOUSE restaurant in the Philadelphia, Pennsylvania area. During these discussions, Gutman disclosed the terms of plaintiffs' standard franchise agreement to the group. However, in addition to the terms set forth in plaintiffs' standard franchise agreement, Gutman proposed certain non-standard franchise terms to the Philadelphia Group that he claimed could be included in an "addendum" to plaintiffs' standard franchise agreement. Gutman was required to obtain (but did not receive) permission from PROTEINHOUSE or one of its principals, Bick or Reis, to propose the non-standard terms he proposed to the Philadelphia Group. When the plaintiffs learned of the non-standard terms Gutman proposed, they, through counsel, indicated to the Philadelphia Group's counsel that they would not be able to offer the non-standard terms Gutman proposed. The plaintiffs proposed an alternative deal to the Philadelphia Group. However, they were unable to save the deal. To date, the Philadelphia Group has not entered into a franchise agreement with the plaintiffs. The plaintiffs' rejection of the unauthorized and non-standard franchise terms Gutman proposed angered Gutman, and on or about October 3, 2017, Gutman terminated his business relationship with the plaintiffs.

On or about October 19, 2017, the plaintiffs learned that Horch had accessed and downloaded certain highly confidential and proprietary information and trade secrets from plaintiffs' computers including, without limitation: (i) the specific identities and contact information of the principal owners, investors, and decision-makers associated with plaintiffs' existing and prospective franchisees; (ii) a training manual for the operation of PROTEINHOUSE restaurants; (iii) an equipment list for PROTEINHOUSE restaurants; (iv) sales lists; (v) financial models; (vi) sales reports; (vii) restaurant designs; (viii) product mix reports; (ix) marketing plans; and (x) other franchisee training materials. The plaintiffs terminated Horch for cause based on his refusal and failure to follow the plaintiffs' directions and instructions for performing his job duties and based upon his theft of their confidential information and trade secrets.

On October 20, 2017, Horch stated that in exchange for a $15,000 payment, he would agree that he would not "consult with Franchisees that are seeking [his] advice on the viability of ProteinHouse."

On October 22, 2017, through counsel, the plaintiffs sent Horch a cease and desist letter, demanding that Horch cease and desist from interfering and threatening to interfere with the plaintiffs' contractual and business relationships with its existing and prospective franchisees. The plaintiffs also demanded that Horch return any and all confidential information and trade secrets. To date, Horch has returned none of the plaintiffs' confidential information and trade secrets.

On or about October 18, 2017, two of plaintiffs' franchisees, Viktor Ryan and Scott Breault, forwarded an email to plaintiff Andrew Bick they had received from the Gmail address rashardkeen4@gmail.com titled "ProteinHouse that you do not know," which contained numerous allegedly false, defamatory, and/or derogatory statements about plaintiffs, and specifically Bick. The plaintiffs contend that rashardkeen4@gmail.com is a fraudulent email address, and that Gutman, Horch and/or unknown defendant John Doe, used the false email address to send the email in order to disguise the sender's true identity.

3

On October 30, 2017, upon information and belief, Gutman contacted GoDaddy, the registrar of the <proteinhouse.com> website, falsely represented that he was the owner of the <proteinhouse.com> domain name and website, provided his contact information to GoDaddy, and changed the password to the GoDaddy account that previously allowed the plaintiffs to administer the domain name, and took down all of the website's content. As a result, all of the digital marketing and social media marketing that the plaintiffs had directed to the robust content on the <proteinhouse.com> website was instead directed to a GoDaddy "parking" page. On October 30, 2017, one of the plaintiffs' franchisees immediately complained.

The loss of the <proteinhouse.com> website has caused and is continuing to cause the plaintiffs (and the PROTEINHOUSE franchisees) to suffer irreparable harm and injury to their business, reputations, and goodwill. Moreover, as a result of this lost advertising, the plaintiffs and franchisees have lost customer visits to their PROTEINHOUSE restaurants and associated sales revenue in amounts that are unknown and cannot be quantified. The loss of the <proteinhouse.com> website has caused and threatens to further cause injury and damage to the plaintiffs' business relationships with their franchisees.

The plaintiffs are likely to succeed on the merits or have raised serious questions going to the merits of their claims for cybersquatting in violation of the Anti-cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (Count I) and for misappropriation of trade secrets in violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. 1836 *et seq.* (Count II).

However, the plaintiffs have not provided any evidence that the defamatory email was sent by the named defendants in this action, or that the defendants made any other defamatory statements. They merely state that, upon information and belief, the Gmail address rashardkeen4@gmail.com is somehow associated with the defendants or some unidentified John Doe. The plaintiffs at this stage do not provide sufficient evidence to conclude that they are likely to succeed on the merits of their Nevada common law claims for defamation and defamation *per se* (Count III) against Horch or Gutman. I cannot enforce a preliminary injunction against an unnamed and unknown defendant.

The plaintiffs have suffered irreparable injury to their reputations and business by the

4

misappropriation of trade secrets and cybersquatting claims that cannot be quantified and that are likely to continue in the absence of a preliminary injunction.

The balance of hardships tips in favor of the plaintiffs because a preliminary injunction would merely return the <proteinhouse.com> domain name to LRAB from whom it was seized, and would temporarily keep it there, and would only require the defendants to refrain from using or disclosing the plaintiffs' trade secrets and destroying relevant evidence. On the other hand, the failure to issue a preliminary injunction will likely cause the plaintiffs to suffer additional irreparable injury and incur additional expense if the <proteinhouse.com> domain name were transferred to other registrars or registrants outside of the Court's jurisdiction or if the defendants use and disclose plaintiffs' trade secrets.

The issuance of a preliminary injunction is in the public interest because it will promote the protection of trademark rights and trade secret rights. The defendants will suffer minimal damage by the issuance of a preliminary injunction. Therefore, a nominal bond of $500 is reasonable security.

The plaintiffs have also not sufficiently shown that I have personal jurisdiction over defendant Ken Gutman in order to enjoin him. Therefore, at the present time, no order is being issued as to Gutman.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  Defendant Steve Horch and all other persons acting in concert or participation with him are hereby preliminarily restrained and enjoined from:

    (a) registering or maintaining a registration for, trafficking in, or using any Internet domain name containing the PROTEINHOUSE trademark or any confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs;

    (b) misappropriating, using, or disclosing plaintiffs' trade secrets including, without limitation, any of plaintiffs: (i) franchisee information; (ii) operating manuals; (iii) equipment lists; (iv) sales lists; (v) financial models; (vi) sales reports; (vii) restaurant designs; (viii) product mix reports; (ix) marketing plans; or (x) other franchisee training materials;

5

(c) deleting or destroying evidence (in any form) relevant to the plaintiffs' allegations, including, without limitation, text messages, emails, faxes, and letters;

2. The $500 deposit previously posted as security for the TRO shall remain in place as security for this preliminary injunction.

**ENTERED** this 15th day of November, 2017.

_____
**UNITED STATES DISTRICT JUDGE**